T.C. Summary Opinion 2007-92


UNITED STATES TAX COURT


KENNETH W. AND WALDRAUT N. HINSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12422-06S.            Filed June 7, 2007.


Kenneth W. Hinson, pro se.

<u>Lynn M. Curry</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

_____

    [1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2003.

Respondent determined a deficiency in petitioners' Federal income tax for 2003 of $2,076.50. The sole issue for decision is whether Kenneth W. Hinson properly deducted $7,200 paid to his ex-wife in 2003 as alimony under section 71(b). We hold that he did not.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time the petition was filed, Kenneth W. Hinson (petitioner) and Waldraut N. Hinson resided in Ponte Vedra Beach, Florida.[2]

Petitioner and Linda Hinson were married in December 1969 and divorced in March 1993. The Final Judgment of Dissolution of Marriage (divorce decree) provided that, inter alia, petitioner was to pay his ex-wife $1,200 per month in "rehabilitative alimony" until June 30, 1996. The divorce decree also provided that petitioner was to pay his ex-wife a total of $72,000 in "lump-sum alimony", payable in installments of $600 per month, beginning July 1, 1996, and ending June 30, 2006. The divorce

---

[2] Although Kenneth and Waldraut Hinson petitioned the Court in response to respondent's notice of deficiency, only Mr. Hinson appeared at trial. Further, the sole issue presented in this case concerns payments Mr. Hinson made to his ex-wife in 2003. Therefore, as a matter of convenience, we refer to Mr. Hinson alone as petitioner.

decree did not specify whether petitioner's obligation to make these payments would terminate upon his ex-wife's death.

In 2003, petitioner paid his ex-wife $7,200 in monthly installments per the divorce decree. Respondent contends that these payments did not qualify as alimony under the Internal Revenue Code.

## Discussion[3]

Section 71(a) provides the general rule that alimony payments are included in the gross income of the payee spouse; section 215(a) provides the complementary general rule that alimony payments are tax deductible by the payor spouse in "an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year."

The term "alimony" means any alimony as defined in section 71. Section 71(b) provides:

> SEC. 71(b). Alimony or Separate Maintenance Payments Defined.--For purposes of this section-
>
>> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if-
>>
>>> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>>>
>>> (B) the divorce or separation instrument does not designate such payment as a payment which is not

---

[3] The issue for decision is essentially legal in nature; accordingly, we decide it without regard to the burden of proof.

includable in gross income * * * and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Both parties agree that petitioner's payments to his ex-wife satisfied the requirements set out in section 71(b)(1)(A), (B), and (C). Payment was made in cash, made pursuant to a "divorce or separation instrument" as described in section 71(b)(2)(C), and the payment was not ineligible for the section 71 and 215 deduction/inclusion scheme. At the time of payment, petitioner and his ex-wife were not members of the same household. The disagreement in this case is solely about whether petitioner's payments satisfied section 71(b)(1)(D); i.e., whether petitioner's liability to make payments would have terminated in the event of his ex-wife's death. If the payments would have terminated in the event of his ex-wife's death, the payments would have been "alimony". Because it seems clear that petitioner's payments would not have terminated in the event of

his ex-wife's death, we agree with respondent that the payments were not alimony.

As petitioner's divorce decree is silent on whether his monthly payments to his ex-wife would survive her death, our analysis is guided by Florida State law. "Although Federal law controls in determining petitioner's income tax liability * * *, State law is necessarily implicated in the inquiry inasmuch as the nature of petitioner's liability for the payment" was based in Florida law. Berry v. Commissioner, T.C. Memo. 2000-373, affd. 36 Fed. Appx. 400 (10th Cir. 2002); see also, e.g., Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987). In Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967), the Supreme Court addressed the means for determining State law in the context of a Federal tax case and stated that "the State's highest court is the best authority on its own law."

Florida's alimony statute specifically permits a trial court to award alimony in the form of periodic payments, lump-sum payments, or both. See Fla. Stat. Ann. sec. 61.08(1) (West 2006). "By definition, 'lump-sum alimony' is a fixed and certain amount, the right to which is vested in the recipient and which is not therefore subject to increase, reduction, or termination in the event of any contingency, specifically including those of death or remarriage." Boyd v. Boyd, 478 So. 2d 356, 357 (Fla.

Ct. App. 1985). According to the Florida Supreme Court, an award of lump-sum alimony survives the death of both the obligor and the obligee. See <u>Canakaris v. Canakaris</u>, 382 So. 2d 1197, 1201 (Fla. 1980); see also Fla. Stat. Ann. sec. 61.075(2) (West 2006); <u>Filipov v. Filipov</u>, 717 So. 2d 1082, 1084 (Fla. Ct. App. 1998). Thus, it seems clear that an award of lump-sum alimony in this case would not meet the requirement of section 71(b)(1)(D) for deduction eligibility.

Petitioner argues that the label of "lump-sum alimony" in his divorce decree should not be conclusive. Accordingly, he directs us to caselaw discussing the reasons behind a typical award of lump-sum alimony and points to the differences between his situation and the cases cited by respondent. Although applying the principle of substance over form is often appropriate, this Court is not in a position to review the trial court's specific award of "lump-sum alimony", nor is it our place to second-guess the award's function on the record we have before us.

Accordingly, we hold that petitioner's deduction of the $7,200 paid to his ex-wife in 2003 was improper as it did not meet the definition of "alimony" under section 71(b)(1)(D).

To reflect our disposition of the disputed issue,

<u>Decision will be entered</u>

<u>for respondent.</u>